CHROMALLOY AMERICAN
CORPORATION, Appellant,

v.

SUN CHEMICAL CORPORATION and
Norman E. Alexander, Appellees.

CHROMALLOY AMERICAN
CORPORATION, Appellee,

v.

SUN CHEMICAL CORPORATION and
Norman E. Alexander, Appellants.

Nos. 79–1741, 79–1757.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1979.

Decided Dec. 14, 1979.

David Hyde, Cahill, Gordon & Reindel, New York City, for Sun Chemical Corp., et al.; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., on brief.

John Ashcroft, Atty. Gen., and B. J. Jones, Asst. Atty. Gen., Jefferson City, Mo., amicus curiae brief.

Before LAY, HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This case, arising under disclosure provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (1977), requires us to decide whether the district court[1] erred in the partial grant and partial denial of preliminary injunctive relief.

Plaintiff-appellant Chromalloy American Corporation (Chromalloy) appeals the denial of injunctive relief which would compel defendant Sun Chemical Corporation to disclose its proposals for control of Chromalloy, and which would halt the purchase of Chromalloy stock by Sun for ninety days. Defendants-appellees Sun Chemical Corporation (Sun) and Norman E. Alexander cross-appeal from the district court's order that Sun disclose an intention to obtain control of Chromalloy.

We assume jurisdiction on appeal pursuant to 28 U.S.C. § 1292(a). Finding no error of law and no abuse of discretion in the district court's actions, we decline to reverse.

## I. Procedural and Factual Background.

In January, 1978 Sun Chemical Corporation began purchasing significant amounts of Chromalloy stock on the New York Stock Exchange. Chromalloy is a diversified corporation with revenues in fiscal year 1978 of nearly $1.4 billion and net earnings of $47 million, while Sun is a considerably smaller corporation with 1978 revenues of $394 million and net earnings of $20 million. Norman E. Alexander is Chief Executive

Thomas J. Guilfoil, Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for Chromalloy American Corp.; Thompson & Mitchell, St. Louis, Mo., Whitman & Ransom, New York City, and Skadden, Arps, Slate, Meagher & Flom, New York City, on brief.

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

Officer and Chairman of Sun's Board of Directors, and has been instrumental in instigating and furthering the purchase of Chromalloy stock by Sun Chemical Corporation.

By February 5, 1979 Sun had acquired 605,620 shares, or 5.2 per cent, of Chromalloy's total outstanding shares.[2] Sun was therefore required to comply with the disclosure provisions of § 13(d) of the Securities Exchange Act, 15 U.S.C. § 78m(d)(1) (1976).[3] Pursuant to the disclosure requirements, Sun on February 5, 1979 filed its first Schedule 13D. Sun stated that its acquisitions were for investment; that it had no present intention of seeking control of Chromalloy; that it presently intended to continue to increase its holdings; that the amount of such increase had not been determined; that Sun had been discussing with certain directors and members of Chromalloy management the possible increase in Sun's holdings; and that Sun might "at any time determine to seek control of Chromalloy." In four subsequent amendments to the Schedule 13D between April, 1979 and late July, 1979 Sun reported its plans to purchase additional stock, its unsuccessful attempt to gain representation on the Chromalloy Board, and its negotiations regarding a "stand-still" agreement whereby Sun would limit its purchases for a period of time as a condition of representation on the Chromalloy Board. In each of the amendments to its Schedule 13D Sun disclaimed any intent to control Chromalloy.

By late July, 1979 Sun's ownership had increased to nearly ten per cent of Chromalloy's outstanding stock. Following a large block purchase of stock by Sun at the end of July, Chromalloy filed the present action for injunctive and declaratory relief, alleging violations of Sections 13(d) and 14(d) of the Securities Exchange Act, the Missouri Take-Over Bid Disclosure Act, and § 203 of the Delaware General Corporation Law. Only the Count requesting injunctive relief pursuant to Section 13(d) of the Securities

Exchange Act, 15 U.S.C. § 78m(d), is relevant to this appeal.

On August 1, 1979, when Chromalloy's verified complaint was filed, the district court granted a temporary restraining order which halted all purchases of Chromalloy stock by Sun and prohibited Sun's use of already-acquired stock to influence Chromalloy management. After an evidentiary hearing on August 14, 1979, the court on August 20, 1979 issued its findings of fact, conclusions of law and order, granting in part and denying in part Chromalloy's request for a preliminary injunction.

The district court found that Norman Alexander and Sun "have had the intent to control Chromalloy from the beginning," and that "[d]efendants have intended to exert considerable influence over the Board of Directors of Chromalloy, and, through this influence, direct the policies and management of Chromalloy." Pursuant to 15 U.S.C. § 78m(d), the court enjoined further acquisition of Chromalloy stock until Sun's Schedule 13D was amended to reflect this intention.

On August 21, 1979 Chromalloy was granted leave to brief the issue of whether further injunctive relief was required. Chromalloy sought further disclosures by Sun, the mailing of a corrected disclosure statement to Chromalloy stockholders at Sun's expense, and a "cooling off" period of ninety days during which Sun's purchases would be enjoined while information was disseminated to investors and the public. On August 29, 1979 the court denied Chromalloy's request for additional injunctive relief, at the same time approving Sun's version of an amended Schedule 13D.

In the court-approved Schedule 13D, Sun acknowledged its "intention to continue to seek representation on the Board of Directors of [Chromalloy] and to exercise, if possible, considerable influence over the Board of Directors of [Chromalloy] and thereby seek to direct the policies and management of [Chromalloy]." Sun stated its

---

**2.** Percentages assume conversion of the Chromalloy preferred stock held by Sun.

**3.** Hereinafter "Williams Act" or "Section 13(d)."

intention to acquire sufficient shares of Chromalloy stock to utilize the equity method of accounting, that is, twenty per cent of the combined voting power of all classes of Chromalloy stock. Sun disclosed that insofar as "a combination of arithmetic and influence constitutes control of [Chromalloy], it is Sun's intention, absent unforeseen contingencies, to attempt to ultimately obtain control of [Chromalloy]."

Upon being advised that this amended Schedule 13D had been filed with the Securities and Exchange Commission, the district court lifted the preliminary injunction then in effect to allow appellees to resume purchasing Chromalloy stock.

On September 4, 1979 Chromalloy obtained from this court an interim stay to prevent the lifting of the district court's injunction pending argument before this court's full administrative panel. On September 12, 1979 the administrative panel denied Chromalloy's motion for a stay, quashed the interim stay, and ordered expedited hearing of the present appeal.

## II. The Standard of Review.

▪ The scope of our review on appeal is limited. Traditionally, a party seeking a preliminary injunction must prove (1) substantial probability of success on the merits, and (2) irreparable injury if injunctive relief is not forthcoming. *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 866 (8th Cir. 1977); *Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973). However, in *Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978), this court directed the district court on remand to apply what may be slightly different standards for a preliminary injunction used in the Second Circuit. The

Second Circuit has held that a preliminary injunction should issue upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). *See also Minnesota Association of Health Care Facilities, Inc. v. Minnesota Dept. of Public Welfare*, 602 F.2d 150 (8th Cir. 1979); *Young v. Harris*, 599 F.2d 870 (8th Cir. 1979); *Dakota Wholesale Liquor, Inc. v. Minnesota*, 584 F.2d 847 (8th Cir. 1978); *William Inglis & Sons Baking Co. v. ITT Continental Banking Co.*, 526 F.2d 86, 88 (9th Cir. 1975).

▪ On review, the grant or denial of a preliminary injunction may be reversed only if, under the applicable standard, the trial court abused its discretion or based its decision on an erroneous legal premise. *FTC v. National Tea Co.*, 603 F.2d 694, 696 (8th Cir. 1979); *Dakota Wholesale Liquor, Inc. v. Minnesota, supra*, 584 F.2d at 849; *Modern Controls, Inc. v. Andreadakis*, 578 F.2d 1264, 1270 (8th Cir. 1978). We consider the present appeal in this limited context and find no ground for reversal under either standard.

## III. Issues on Appeal.

Chromalloy's position on appeal is that the district court correctly ordered Sun to disclose a control intention, but abused its discretion in refusing to order further disclosures. The disclosures sought by Chromalloy include Sun's wish to use Chromalloy money to pay for transactions with Sun, as allegedly required by Item 3 of Section 13D;[4] Sun's plans upon obtaining control to cause Chromalloy to acquire the assets of Sun, as allegedly required by Item 4 of

---

**4.** Item 3 of Schedule 13D, as amended by the SEC effective May 30, 1978, provides in relevant part:

*Source and Amount of Funds or Other Consideration.* State the source and the amount of funds or other consideration used or to be used in making the purchases, and if any part of the purchase price is or will be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding, trading or voting the securities, a description of the transaction and the names of the parties hereto. SEC Exchange Act, Release Nos. 33–5925, 34–14692, IC–10212; 43 F.R. 18484, 18498 (April 28, 1978); [1978 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 81,571.

Schedule 13D;[5] Sun's proposals to sell various divisions of Chromalloy as allegedly required by Item 4 of Schedule 13D;[6] and Sun's offer to "take care of" certain Chromalloy officers in return for support, as allegedly required by Item 6 of Schedule 13D.[7] Chromalloy also argues that a properly amended Schedule 13D should contain the warning that Sun's previous Schedule 13D and amendments were false and should not be relied upon. Moreover, in order properly to disseminate this information, Chromalloy contends that a cooling off period and a stockholder mailing are required. On cross-appeal, Sun contends that the district court erred as a matter of law in finding that Sun has a purpose to acquire control of Chromalloy.

The issues on appeal are governed by recent SEC revisions in Schedule 13D, particularly in Item 4. Under the former terms of Item 4, a securities purchaser was required to state the purpose of his purchase, and if one purpose was to acquire control, to describe any plans or proposals for major corporate changes.[8] In the revised version of Item 4,[9] effective more than six months before Sun's first Schedule 13D filing, the term "control" is not used. Rather, a securities purchaser is required to disclose the purpose of the purchase and, in addition, to disclose certain plans or proposals regardless of whether the underlying purpose is to acquire control of the issuer.[10] The Securities and Exchange Commission has expressly noted that under revised Item 4, "plans or proposals which result in or relate to extraordinary corporate transactions have been made a separate item of disclosure." [11]

Under the provisions of the revised SEC regulations, we are confronted with two

---

5. Item 4, as amended by the SEC effective May 30, 1978, provides in relevant part:

> *Purpose of Transaction.* State the purpose or purposes of the acquisition of securities of the issuer. Describe any plans or proposals which the reporting persons may have which relate to or would result in:
>
> (a) The acquisition by any person of additional securities of the issuer, or the disposition of securities of the issuer;
>
> (b) An extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the issuer or any of its subsidiaries;
>
> (c) A sale or transfer of a material amount of assets of the issuer or any of its subsidiaries; . . .
>
> (f) Any other material change in the issuer's business or corporate structure.

SEC Exchange Act Release Nos. 33–5925, 34–14692, IC–10212; 43 F.R. 18484, 18498 (April 28, 1978); [1978 Transfer Binder] Sec.L.Rep. (CCH) ¶ 81,571.

6. *See* n.5, *supra,* for text of Item 4.

7. Item 6, as amended by the SEC effective May 30, 1978, provides in relevant part:

> *Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.* Describe any contracts, arrangements, understandings or relationships (legal or otherwise) among the persons named in Item 2 and between such persons and any person with respect to any securities of the issuer, including but not limited to transfer or voting of any of the securities, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or loss, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, understandings or relationships have been entered into.

SEC Exchange Act Release Nos. 33–5925, 34–14692, IC–10212; 43 F.R. 18484, 18499 (April 28, 1978); [1978 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 81,571.

8. Item 4 of Schedule 13D previously provided:

> *Purpose of Transaction.* State the purpose or purposes of the purchase or proposed purchase of securities of the issuer. *If the purpose or one of the purposes of the purchase or proposed purchase is to acquire control* of the business of the issuer, describe any plans or proposals which the purchasers may have to liquidate the issuer, to sell its assets or to merge it with any other persons, or to make any other major change in its business or corporate structure.

(emphasis added). 17 C.F.R. § 240.13d–101 (1978).

9. 43 F.R. 18498 (April 28, 1978). The text of Item 4 is set forth, *supra,* at n.5.

10. SEC Exchange Act Release Nos. 33–5925, 34–14692, IC–10212; 43 F.R. 18484, 18493 (April 28, 1978); [1978 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 81,571.

11. *Id.*

distinct questions: first, whether the district court erred in finding that Sun has a disclosable purpose to acquire control, and second, whether the district court abused its discretion in refusing to order disclosure of Sun's proposals for corporate changes aside from Sun's control intent.

*IV. The Disclosure of Control Purpose.*

■ In assessing Sun's obligation to disclose a control purpose, we look to the definition of "control" appearing in Rule 12b–2(f), 17 C.F.R. § 240.12b–2(f) (1979), made applicable to Schedule 13D filings by 17 C.F.R. § 240.12b–1 (1979).[12] Rule 12b–2(f) provides:

> *Control.* The term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

17 C.F.R. § 240.12b–2(f) (1979).

Sun argues that the district court erred under this definition in ordering Sun to disclose an intent to acquire control of Chromalloy. First, the district court is said to have improperly equated Sun's intention to influence Chromalloy policies with an intention to seek control. Second, Sun alleges that the district court did not find a "fixed plan" by Sun to acquire control of Chromalloy. Finally, the "reasonable doubt" language of Rule 12b–22, 17 C.F.R. § 240.12b–22 (1979),[13] is said by Sun to limit a purchaser's obligation to disclose control intentions. While these arguments present close questions, we hold that the district court neither erred as a matter of law nor

abused its discretion in ordering the disclosure of Sun's control purpose.

■ Contrary to Sun's first contention, Sun's desire to influence substantially the policies, management and actions of Chromalloy amounts to a purpose to control Chromalloy. There is ample support in the record for the finding of a control purpose. Sun has disclosed its plans to acquire twenty per cent of Chromalloy's stock, its attempts to gain representation on Chromalloy's Board, and its intention to review continually its position with respect to Chromalloy. The district court further found that Sun has prepared an "acquisition model" with Chromalloy as a "target"; that Norman Alexander first learned of the investment opportunities in Chromalloy when a brokerage firm informed him that the thirty-five per cent of common stock held by insiders was not in a solid management block; that Norman Alexander's private memoranda have been concerned from the start with the split on Chromalloy's Board of Directors as a possible avenue to power; and that according to an investment banker, Sun's projected twenty per cent interest in Chromalloy would be a wise business decision only if Sun is attempting to gain control. Taken together, these facts support the finding that Sun proposes to control Chromalloy through a combination of numbers and influence.

■■ As a matter of law, Rule 12b–2(f) contemplates that influence can be an element of control. Control is defined to include "the [*indirect*] power to . . . cause the direction of . . . policies." Disclosure of a control purpose may be required where the securities purchaser has a perceptible desire to influence substantially

---

**12.** Although revised Item 4 does not use the term "control", we assume that any control purpose is still measurable against the definition of control appearing in Rule 12b–2(f).

Cases decided before the revision of Item 4 have considered the definition of "control" in Rule 12b–2(f) to be controlling. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 451 n.13, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Graphic Sciences, Inc. v. International Mogul Mines Ltd.*, 397 F.Supp. 112, 125 & n.37 (D.D.C.

1974). The Southern District of New York, in a case decided after the effective date of the revised form, considered a number of circumstances in determining control intent without reference to the definition of control in Rule 12b–2(f). *Transcon Lines v. A. G. Becker, Inc.*, 470 F.Supp. 356, 376–78 (S.D.N.Y.1979).

**13.** Made applicable to Schedule 13D filings by 17 C.F.R. § 240.12b–1 (1979).

the issuer's operations. *Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.*, 476 F.2d 687, 696–97 (2d Cir. 1973) (tender offer context); *Graphic Sciences, Inc. v. International Mogul Mines Ltd.*, 397 F.Supp. 112, 125–27 (D.D.C.1974).

■ Moreover, the Securities Exchange Act is remedial legislation and is to be broadly construed in order to give effect to its intent. *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *Bath Industries v. Blot*, 427 F.2d 97 (7th Cir. 1970). To protect the investing public through full and fair disclosure of Sun's intentions, the district court was justified in defining control to include working control and substantial influence. *Graphic Sciences, Inc. v. International Mogul Mines Ltd., supra,* 397 F.Supp. at 125.[14]

■ Sun next contends that the district court failed to find a "fixed plan" to acquire control of Chromalloy. This fact is not determinative. Item 4 of Schedule 13D [15] requires disclosure of a purpose to acquire control, even though this intention has not taken shape as a fixed plan. We do not agree with Sun's contention that disclosure of Sun's control purpose will mislead investors by overstating the definiteness of Sun's plans. *Cf. Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 872 (2d Cir.), *cert. denied*, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974) (disclosure of intention to substantially expand target company would be misleading where purchaser's twenty year study included this possibility but where no plan was adopted); *Susquehanna Corp. v. Pan American Sulphur Corp.*, 423 F.2d 1075, 1084–85 (5th Cir. 1970) (disclosure of plan for merger would be misleading where plan subsisted for only two days before repudiation); *Electronic Speciality Co. v. International Controls Corp.*, 409 F.2d 937, 948 (2d Cir. 1969) (disclosure that purchaser "would give consideration" to merger was sufficient disclosure, where merger was proposed as alter-

native to tender offer). The cited cases stress that disclosure of plans for specific corporate changes can be misleading until these assume definite, non-contingent form. Disclosure of a purchaser's *purpose* in acquiring stock is a different matter. Item 4 specifically requires disclosure of a purpose to acquire control, regardless of the definiteness or even the existence of any plans to implement this purpose.

■ Finally, we find no merit in Sun's argument that SEC Rule 12b–22 limits the obligation to disclose a control purpose. Rule 12b–22 allows registrants under Sections 13 and 15(d) of the Securities Exchange Act to disclaim the *existence* of control:

> *Disclaimer of control.* If the existence of control is open to reasonable doubt in any instance, the registrant may disclaim the existence of control and any admission thereof; in such case, however, the registrant shall state the material facts pertinent to the possible existence of control.

17 C.F.R. § 240.12b–22 (1970). This rule on its face is inapposite to Item 4 of Schedule 13D, since Item 4 requires disclosure of "the *purpose* of the acquisition," while Rule 12b–22 is concerned with *existing* control. We have found no relevant authority, nor has Sun offered any, to support the contention that Rule 12b–22 modifies the obligation of a purchaser to disclose a control purpose.

In sum, we find no error of law and no abuse of discretion in the district court's order that Sun disclose a purpose to seek control of Chromalloy.

## V. Additional Disclosures Sought by Chromalloy.

We also perceive no abuse of discretion in the district court's refusal to order disclosures beyond Sun's court-approved Schedule 13D.

---

**14.** *See also* L. Loss, Securities Regulation 782 (2d ed. 1961) (in the context of other securities regulations, the difference between control and controlling influence is one of degree).

**15.** 43 F.R. 18498 (April 28, 1978). The text of Item 4 is set forth, *supra*, at n.5.

 Admittedly, the purpose of Section 13(d) is to "alert the market place to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control." *Financial General Bankshares, Inc. v. Lance*, [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,403 at 93,424 (D.D.C.1978), *quoting from GAF Corp. v. Milstein*, 453 F.2d 709, 717 (2d Cir. 1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). The disclosure provisions are intended to protect investors, and to enable them to receive the facts necessary for informed investment decisions. *Graphic Sciences, Inc. v. International Mogul Mines Ltd., supra*, 397 F.Supp. at 124 n.36 (D.D.C.1974), *quoting from Tcherepnin v. Knight, supra*, 389 U.S. at 336, 88 S.Ct. 548. However, the objective of full and fair disclosure can be endangered as much by overstating the definiteness of plans as by understating them. *Missouri Portland Cement Co. v. Cargill, Inc., supra*, 498 F.2d at 872, *cert. denied*, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974); *Susquehanna Corp. v. Pan American Sulphur Co., supra*, 423 F.2d at 1085; *Electronic Specialty Co. v. International Controls Corp., supra*, 409 F.2d at 948; *S–G Securities, Inc. v. Fuqua Investment Co.*, 466 F.Supp. 1114, 1128 (D.Mass.1978).

 In the present case, Sun's long-range hopes for certain corporate changes could prove misleading to investors if disclosed as firm proposals. The district court's findings of fact indicate that Sun has made the following tentative overtures towards corporate changes: Norman Alexander once told Moody's Investor Services that any deal with Chromalloy "would be done with Chromalloy's money or they would get out"; Alexander "hoped" Chromalloy would eventually seek to acquire the assets of Sun; Sun commissioned a study to recommend which divisions of Chromalloy are most feasible to sell off; Alexander expressed the opinion that a profit could be realized if a trim-down of Chromalloy were properly executed; and Alexander offered to "take care of" certain Chromalloy Board members in return for their support. Each of these items involves little more than an unconsummated hope, feasibility study, or opinion, not a firm plan or proposal. We note also that Sun and Alexander have to date been denied a seat on Chromalloy's Board of Directors, and are seemingly not in a position to precipitate any of the hoped-for changes.

The degree of specificity with which future plans must be detailed in Schedule 13D filings presents a difficult question. *S–G Securities, Inc. v. Fuqua Investment Co., supra*, 466 F.Supp. at 1128. Thus, within the scope of its discretion, the district court might have required further disclosures of Sun. However, given the arguable danger of overstatement and the rule that parties are not required to disclose plans which are contingent or indefinite, *Missouri Portland Cement Co. v. H. K. Porter Co.*, 535 F.2d 388, 398 (8th Cir. 1976) (tender offer context), we hold that the district court's order refusing further disclosures involved no abuse of discretion.[16]

## VI. *Additional Injunctive Relief.*

The final issue on appeal is whether the district court abused its discretion in refusing Chromalloy's request for a cooling-off period, the mailing of a restated Schedule 13D to Chromalloy shareholders at Sun's expense, and the publication of a restated Schedule 13D in the press.[17]

 We consider the argument for additional injunctive relief in light of the principles set forth by the Supreme Court in

---

**16.** The district court properly suggested that additional injunctive relief might be required in the future by "unforeseen contingencies." We express no opinion as to events which would necessitate such relief, noting only that the full and fair disclosure objectives of the Williams Act are to be observed. *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 26–29, 97 S.Ct. 926,

51 L.Ed.2d 124 (1977); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 97 S.Ct. 926, 51 L.Ed.2d 124 (1975).

**17.** Chromalloy has abandoned on appeal its demand for an offer of rescission to shareholders who have sold to Sun.

*Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). The Court in *Rondeau* considered the availability of injunctive relief to remedy a § 13(d) violation following compliance with the reporting requirements. Recognizing that the injunctive process is designed to deter, not to punish, *id.*, at 61, the Court held that injunctive relief under the Williams Act was subject to traditional equitable limitations. Relief beyond compliance with the reporting requirements is justified only if the petitioner can show irreparable harm in the absence of such relief. *Id.*[18]

▮▮▮ We have concluded that the Schedule 13D approved by the district court adequately discloses Sun's control intention. Given Sun's compliance with § 13(d), we do not perceive such ongoing harm to Chromalloy or its present shareholders[19] as would justify a cooling-off period or a stockholder mailing. Shareholders who were misinformed by Sun's original Schedule 13D and amendments have been reapprised by the same form of communication. The present case is distinguishable from *Weeks Dredging & Contracting, Inc. v. American Dredging Co.*, 451 F.Supp. 468 (E.D.Pa.1978), where the court required that the target company's misleading statements to the press be corrected by a shareholder mailing.

There is also no precedent for a cooling-off period. In the closely analogous context of misleading tender offers, courts have held that a misleading tender offer is adequately cured by an amended offer. *Corenco Corp. v. Schiavone & Sons, Inc.*, 488 F.2d 207, 214–15 (2d Cir. 1973) (specifically rejecting a cooling-off period in tender offer context. *See also Missouri Portland Cement Co. v. H. K. Porter Co.*, *supra*, 535 F.2d 388 (defective tender offer can be cured by an amending offer).

▮▮▮ The disclosure requirements established by Congress are not intended to provide a weapon for current management to discourage takeover bids or prevent large accumulations of stock. *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 26–35, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Rondeau v. Mosinee Paper Corp.*, *supra*, 422 U.S. at 58, 97 S.Ct. 926; *Universal Container Corp. v. Horowitz*, [1977–78] Fed.Sec.L.Rep. (CCH) ¶ 96,161 (S.D.N.Y.1977); S.Rep.No. 550, 90th Cong., 1st Sess., 3 (1967); H.R. Rep.No.1711, 90th Cong., 2d Sess., 4 (1968). Further injunctive relief, particularly a cooling-off period, would in the present case serve largely as a dilatory tool in the hands of current management, and for this reason was properly denied.

In sum, appellant has failed to sustain the burden of demonstrating abuse of discretion in the district court's denial of further disclosures, a cooling-off period, and a stockholder mailing. Appellees likewise fail to convince us that the district court erred as a matter of law in requiring the disclosure of Sun's control purpose.

Affirmed.

▮▮▮

---

18. Because this case involves only the availability of injunctive relief *following compliance* with § 13(d), we are not required to decide what circumstances might justify a decree enjoining a shareholder who is *currently* in violation of § 13(d) from acquiring further shares or exercising voting rights, pending compliance with the reporting requirements. The posture of the case is identical to *Rondeau* in this respect. *Rondeau v. Mosinee Paper Corp.*, *supra*, 422 U.S. at 59 n.9, 97 S.Ct. 926.

19. We do not reach the issue of harm to former Chromalloy shareholders who may have sold to Sun without attempting to garner a control premium. Chromalloy on appeal has pressed the interests of present shareholders and the public in requesting additional relief, perhaps recognizing that a cooling-off period and additional dissemination of information cannot redress the harm, if any, suffered by past shareholders who have already sold to Sun. These shareholders have an adequate remedy at law through an action for damages. *Rondeau v. Mosinee Paper Corp.*, *supra*, 422 U.S. at 60, 97 S.Ct. 926; *Missouri Portland Cement Co. v. H. K. Porter*, 535 F.2d 388, 395, 399 (8th Cir. 1976).