52 F.3d 15
 Fed. Sec. L. Rep. P 98,666
AZURITE CORP. LTD., Plaintiff-Appellant-Cross-Appellee,
v.
AMSTER & CO., formerly known as Lafer, Amster & Company;
Arnold Marvin Amster; and Joel Packer,
Defendants-Appellees-Cross-Appellants,
Barry Stuart Lafer, Defendant-Appellee.
 Nos. 263, 391, Dockets 94-7197, 94-7235.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 6, 1994.
Decided April 5, 1995.
 
 Peter A. Jaffe, New York City (Jaffe & Asher, Tomas Szoboszlai, of counsel), for plaintiff-appellant-cross-appellee.
 Peter C. Neger, New York City (Richards & O'Neil, of counsel) for defendants-appellees-cross-appellants Amster & Co., Arnold Marvin Amster and defendant-appellee Barry Stuart Lafer.
 Buchwald & Kaufman, New York City (Don D. Buchwald, of counsel), for defendant-appellee-cross-appellant Joel R. Packer.
 Coleman & Rhine, New York City (Ira Daniel Tokayer, of counsel), for defendants-appellees-cross-appellants.
 Proskauer Rose Goetz & Mendelsohn, New York City (Arnold S. Jacobs, of counsel), for defendants-appellees-cross-appellants.
 Before: LUMBARD, FEINBERG, and MAHONEY, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 On February 1, 1989, Azurite Corp. Ltd. brought an action in the Southern District under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), to recover damages from the defendants, Amster & Co., then known as Lafer, Amster & Co. ("LACO"), and its partners Arnold Marvin Amster, Barry Stuart Lafer, and Joel Richard Packer. Azurite claimed that the defendants made false disclosures and omissions in their Schedule 13D amendments filed under section 13(d) of the Exchange Act, 15 U.S.C. Sec. 78m(d), thereby causing Azurite and other investors to sell their shares in Graphic Scanning Corp. in the period between February 3 and March 3, 1986 at prices lower than they would have sold the shares had there been proper disclosure. The defendants allegedly decided to wage a proxy contest for control of Graphic no later than February 3, 1986, but misrepresented the extent and timing of their plans under Item 4 of their Schedule 13D Amendments 5, 6, and 7 filed on February 10, February 18, and March 6, respectively.
 
 
 2
 This action followed the Securities and Exchange Commission's institution of a virtually identical action on December 5, 1988. The parties agreed to suspend proceedings pending disposition of the SEC action. Judge Haight granted summary judgment for the defendants and dismissed the complaint in the SEC action, SEC v. Amster & Co., 762 F.Supp. 604 (S.D.N.Y.1991), ruling,
 
 
 3
 [D]efendants were under no duty to report preliminary considerations of a proxy contest for Graphic, any more than they were required to report other options under consideration. The duty to report arises only when a shareholder forms the purpose, which is to say the intention, of acquiring control of the company.
 
 
 4
 Id. at 614. He found that the record supported only the conclusions that "LACO had not reached a decision to wage a proxy contest prior to the time they announced that intention in amendment 7" and that "the earlier amendments ... gave timely advice of those matters not fully determined." Id. at 617 (quotation marks omitted). On motion for reconsideration the SEC argued that Item 4, as amended, required disclosure of LACO's plans and proposals not later than February 3, 1986. Judge Haight stated,
 
 
 5
 Whatever the effect of the 1978 amendment to Item 4 may be in other contexts, I think it plain that where the focal point of the SEC's complaint is a failure to disclose a control purpose (by definition the purpose of every proxy contest), plans and proposals of the sort revealed by the evidence in this case need not be disclosed.
 
 
 6
 Amster & Co., 1991 WL 275760 (Dec. 19, 1991). The SEC filed a notice of appeal, which it later withdrew.
 
 
 7
 On October 21, 1992, Judge Sotomayor allowed Azurite additional discovery beyond the discovery in the SEC action. On February 19, 1993, Azurite moved for leave to amend its complaint by adding allegations of insider trading by LACO facilitated by Drexel Burnham Lambert. The defendants moved for summary judgment and for sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. Sec. 1927. On February 2, 1994, Judge Sotomayor denied leave to amend, granted summary judgment in favor of the defendants, and denied sanctions. 844 F.Supp. 929. She stated,
 
 
 8
 I agree with Judge Haight's interpretation of the law and that of Judge Milton Pollack in Todd Shipyards Corp. v. Madison Fund, Inc., 547 F.Supp. 1383, 1387 (S.D.N.Y.1982), that Sec. 13(d) does not require a party filing a Schedule 13D statement to disclose preliminary considerations, exploratory work or tentative plans to wage a proxy battle and that it only requires disclosure of definite plans.
 
 
 9
 Id. at 934 & n. 1. She found no genuine issue of fact as to whether the Schedule 13D filings were deficient or whether insider trading occurred. Id. at 936, 939. Azurite appeals from the order of summary judgment dismissing the complaint and denial of leave to amend the complaint. LACO, Amster, and Packer cross-appeal the denial of sanctions.
 
 
 10
 The facts of this case are more fully set out in the two district court opinions. A summary follows. After accumulating over 5% of the Graphic stock outstanding, on August 19, 1985 the defendants filed with the SEC a Schedule 13D, in which they stated that they had acquired Graphic stock "for the purpose of making an investment" and "not with the present intention of acquiring control of the Company's business." Because LACO, a partnership engaged in risk arbitrage, based its investment on the anticipated liquidation of Graphic's assets, it was disturbed by Graphic's SEC Form S-1 filing on January 28, 1986, which indicated that Graphic might not sell all of its assets if the offers to purchase were too low.
 
 
 11
 Over the next few weeks, LACO consulted with others to consider its options in dealing with the situation. On February 3, 1986, defendants met with Elaine Ruege and Scott Bessent of the Olayan Group, a Graphic institutional investor. Ruege wrote a memorandum dated February 6, documenting that "Lafer Amster is proposing that the shareholders group together in a proxy fight and force Mr. Yampol to liquidate [Graphic]"--Barry Yampol was the chairman of Graphic, as well as the president and sole shareholder of Azurite. The memo briefly sketched some aspects of the proposal. At deposition, Bessent explained that the proxy contest was "one of their [LACO's] options." The Olayan Group decided not to pursue this course of action, and a week or two later communicated this to Amster. A possible proxy contest also was mentioned at a February 4 meeting between Amster and Lafer and representatives of the General Electric Investor Corporation, LACO's largest limited partner.
 
 
 12
 Meanwhile, LACO increased its holdings in Graphic. On February 3, it purchased non-voting convertible debentures with a face value of $1.7 million for $1,466,250. Over the next four days, it purchased 205,000 additional shares of common stock for $1,410,000. Lafer and Amster as individuals each bought 25,000 shares on February 14.
 
 
 13
 Graphic then filed with the SEC a Form 8-K dated February 7, a Friday, stating that it was transferring certain valuable assets to Yampol. On Monday, February 10, LACO filed Amendment 5 to its Schedule 13D, not indicating any change in its investment purpose. According to Arnold Jacobs, LACO's outside counsel, midday on February 10, after LACO first heard of the 8-K filing, they engaged in "exploratory conversations" that included discussion of a proxy contest.
 
 
 14
 LACO met with John A. Morgan, managing director of the investment firm Morgan Lewis Githens & Ahn, and a general partner of LACO, on February 10 or 11, and with John J. McAtee, Jr. of the law firm of Davis Polk & Wardwell on February 12, to consider the alternatives, discussing "all of the normal possibilities" with regards to Graphic; a proxy fight was an "option."
 
 
 15
 On February 13 or 14, LACO consulted the law firm of Willkie Farr & Gallagher, which they retained as counsel. On February 18, LACO filed Amendment 6, which stated under "Item 4. Purpose of Transaction " that in light of Graphic's Form 8-K it "will not necessarily hold the shares of [Graphic] solely for the purpose of making an investment," and that it "is now giving consideration on a preliminary basis to various courses of action ... including ... a proxy contest." On March 3, it filed Amendment 7, declaring, "LACO and [others] ... have decided to join a group to engage in a proxy contest to oust the present Board." The defendants eventually gained control of Graphic with the help of Drexel, which then conducted the liquidation.
 
 
 16
 Azurite first argues that Judge Sotomayor erred in adopting Judge Haight's interpretations of the scope of disclosure required by Item 4 of Schedule 13D. 844 F.Supp. at 934. Second, Azurite argues that, whether or not only definite plans must be disclosed, Judge Sotomayor erred in finding no genuine issue of material fact as to whether before the respective amendments were filed LACO had formed a definite plan or proposal to wage a proxy battle, or otherwise had intended to acquire control of Graphic. We affirm substantially for the reasons stated in the district court opinions. 844 F.Supp. at 934-36; Amster & Co., 762 F.Supp. at 609-17.
 
 
 17
 Regarding the legal standard of disclosure, Azurite argues that the district court improperly tied disclosure of "plans or proposals" to the formation of a control purpose. Further, Azurite contends that given the 1978 rule amendment to Item 4 and the Supreme Court decision in Basic Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), materiality is the standard governing the disclosure of plans.
 
 
 18
 Pursuant to section 13(d), the SEC requires the beneficial owner of more than 5% of a class of stock to make certain disclosures on a Schedule 13D. 17 C.F.R. Sec. 240.13d-101. Item 4 of the Schedule as amended in 1978 requires the disclosure of two things: (1) the purpose of the acquisition of securities, including a purpose to acquire control, and (2) certain enumerated types of plans or proposals, such as those relating to a liquidation or change in management of the issuer, regardless of an intent to acquire control; prior to 1978 plans needed to be disclosed only if there was a control purpose. See Chromalloy American Corp. v. Sun Chemical Corp., 611 F.2d 240, 245-47 (8th Cir.1979). A control purpose includes any intention to acquire control. GAF Corp. v. Milstein, 453 F.2d 709, 714 (2d Cir.1971), cert. denied, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). Such an intention is a determination made with an element of resolve.
 
 
 19
 We also have construed a "plan" as something more definite than vaguely formed thoughts for the future. Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 948 (2d Cir.1969) ("It would be as serious an infringement of these regulations to overstate the definiteness of the plans as to understate them."); see also Missouri Portland Cement Co. v. Cargill, Inc., 498 F.2d 851, 872 (2d Cir.1974), cert. denied, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974); Susquehanna Corp. v. Pan American Sulphur Co., 423 F.2d 1075, 1085-86 (5th Cir.1970).
 
 
 20
 Subsequent cases have followed a similar path, even after Item 4 was amended in 1978. See, e.g., Pantry Pride, Inc. v. Rooney, 598 F.Supp. 891, 900 (S.D.N.Y.1984); Purolator, Inc. v. Tiger International, Inc., 510 F.Supp. 554 (D.D.C.1981). As stated in Todd Shipyards Corp. v. Madison Fund, Inc., 547 F.Supp. 1383, 1387 (S.D.N.Y.1982), "[D]isclosure is to be made of all definite plans and there is no requirement to make predictions, for example, of future behavior; or to disclose tentative plans; or inchoate plans. It is sufficient to merely identify those matters not fully determined." (Internal citations omitted). Thus, unless a course of action is decided upon or intended, it need not be disclosed as a plan or proposal under Item 4.
 
 
 21
 The 1978 amendment to Item 4 does not affect the standard established in our earlier decisions; it eliminates the condition that an acquiror must disclose the purpose of its acquisition only if it has a control intent, but it does not alter the "fixed plan" standard for disclosure of a plan or proposal. See Chromalloy, 611 F.2d at 245-46.
 
 
 22
 Azurite's reliance on the Supreme Court decision in Basic Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), is misplaced. The Court in Basic decided that merger negotiations may be a "material fact" under Rule 10b-5, applying to section 10(b) the standard of materiality it adopted for section 14(a) in TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Whether a plan or proposal is material is not relevant to determining whether it is sufficiently "fixed" to require disclosure as a "plan or proposal" under Item 4; and if a plan need not be disclosed under Item 4, such an omission does not support a section 10(b) claim founded solely upon an alleged section 13(d) violation.
 
 
 23
 We also reject Azurite's second contention that it has presented a genuine issue of fact for trial. Azurite argues that before disclosure in Amendments 6 and 7, LACO had decided to acquire control of Graphic or to wage the proxy contest. However, the district court found that "the evidence presented by Azurite is insufficient, as a matter of law, for any trier of fact to reasonably conclude that Azurite has demonstrated by a preponderance of the evidence that defendants decided to wage a proxy battle for control of Graphic before February 28, 1986." 844 F.Supp. at 934. Upon examination of the record, we cannot conclude that the district court erred as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (Internal citations omitted)).
 
 
 24
 We agree with Judges Sotomayor and Haight that the record, which is based on extensive discovery, indicates only that LACO was exploring many possibilities during the month of February. LACO's advisors all stated that their discussions were preliminary. Azurite emphasizes the memorandum written by Elaine Ruege; however, especially in light of the many options LACO was considering, the "proposal" there mentioned is the type of tentative suggestion that need not be disclosed. The memorandum outlines only a roughly sketched possible course of action.
 
 
 25
 Azurite also argues that the purchase of 205,000 Graphic shares between February 3 and 7, and of the debentures convertible to 160,000 voting shares prove defendants' intent to acquire control, since LACO had stated on January 28 that it was an "unhappy shareholder." These purchases, however, represent only an increase in holdings consistent with the intent of "keeping all alternatives open," 844 F.Supp. at 936.
 
 
 26
 In sum, the evidence in the record as a whole, including the allegations contained in the proposed amended complaint, is insufficient as a matter of law to prove that an intent to acquire control, or a plan to wage a proxy contest or to liquidate Graphic had been formed before it was disclosed. The evidence indicates that Amendment 5 was permissibly silent, and that Amendment 6 reported a change in purpose and Amendment 7 reported the decision to engage in a proxy battle in an adequate and timely fashion.
 
 
 27
 Judge Sotomayor also declined to grant Azurite leave to amend its complaint to allege further false disclosures under section 13(d) and insider trading in violation of section 10(b). Azurite sought to amend the complaint to add further details of the relationship between LACO and Drexel, in order to date the misrepresentations in the Schedule 13D filings back to August 1985, and to show that LACO traded in Graphic stock without disclosing material confidential information on Graphic it had received from Drexel. Denial of leave to amend under Fed.R.Civ.P. 15(a) is reviewed for abuse of discretion. See Barrows v. Forest Laboratories, Inc., 742 F.2d 54, 58 (2d Cir.1984). We agree with Judge Sotomayor's reasoning that amendment would be futile, 844 F.Supp. at 936-40, which is an adequate ground for denial of a motion to amend, Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 28
 LACO, Lafer, and Amster cross-appeal Judge Sotomayor's denial of sanctions under Rule 11 and 28 U.S.C. Sec. 1927. We see no abuse of discretion in Judge Sotomayor's finding, 844 F.Supp. at 940, that Azurite made a good faith effort to persuade her not to follow Judge Haight's unappealed decision in the SEC action. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 399-405, 110 S.Ct. 2447, 2457-61, 110 L.Ed.2d 359 (1990) (standard of review for Rule 11); Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991) (standard of review for section 1927).
 
 
 29
 Judgment affirmed.