**TODD SHIPYARDS CORPORATION,**
Plaintiff,

v.

**MADISON FUND, INC., George D. Gould, William B. Breed, Jr., Bernard L. Schwartz, Furman Selz Mager Dietz & Birney, Inc., and Ezra P. Mager,** Defendants.

No. 82 Civ. 6108(MP).

United States District Court,
S. D. New York.

Oct. 4, 1982.

Cahill, Gordon & Reindel by Raymond L. Falls, Jr., George Wailand, Joel E. Davidson, Alan Koslow, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison by Arthur L. Liman, Robert Laufer, Jack Hassid, Frederick Heather, New York City, for defendants Madison Fund, Inc., Gould and Breed.

Willkie, Farr & Gallagher by Anthony F. Phillips, Paula Mueller, Gerald Kerner, New York City, for defendant Schwartz.

Schulte, Roth & Zabel by Irwin J. Sugarman, Aegis J. Frumento, New York City, for defendants Furman Selz Mager.

## DECISION AND OPINION

MILTON POLLACK, District Judge.

Plaintiff, Todd Shipyards Corporation ("Todd" hereafter) sues for a permanent injunction to block the defendants Madison Fund, Inc. (the "Fund") and Bernard L. Schwartz from making further purchases of Todd's common stock and for various relief on their present holdings, charging that defendants violated § 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d)(1) [the Williams Act] by the allegedly deficient Schedule 13D filed on September 3, 1982 with the Securities and Exchange Commission ("SEC") and the New York Stock Exchange pursuant to the Act and the Rules and Regulations promulgated thereunder. Plaintiff also joined as defendants, the President, Gould, and the Vice-President, Breed, of the Fund and the defendant Furman, Selz, a corporate registered broker-dealer, and its Executive Vice-President, the defendant Mager. (The brokers are joined as alleged members of the purchasing group and as alleged beneficial owners of stock acquired by the group).

Jurisdiction is posited on the federal questions involved. Section 27 of the 1934 Act, 15 U.S.C. §§ 78aa, and 28 U.S.C. §§ 1331 and 1337.

The matter was brought before the Court by order to show cause for a preliminary injunction and following expedited discovery, the issues were tried at a Bench trial. In conformity with Rule 65(a)(2) Fed. R.Civ.P. and on consent of the parties, the Court advanced and consolidated the trial on the merits of this action with the hearing on the preliminary injunction.

The proofs presented consisted of testimony of witnesses, depositions and exhibits. At the conclusion of the trial, decision was reserved. On due deliberation and weighing the evidence, circumstances and probabilities and assessing the credibility of the witnesses, the complaint must be dismissed for failure of the plaintiff to carry its burden of proof to establish its claims by a fair preponderance of the credible evidence. The background follows.

*The Parties*

Plaintiff Todd is a New York corporation whose stock is registered pursuant to Section 12 of the 1934 Act, 15 U.S.C. § 78*l*, and which is listed and traded on the New York Stock Exchange. It has approximately 5,000,000 shares of common stock issued and outstanding. Todd's business consists of shipbuilding and repair and a substantial portion of its revenues is derived from government contracts. Todd's treasury contains approximately $100 million in what was described by a witness as "redundant cash".

Defendant Madison Fund is an investor in the common stock of Todd. It is a closed-end, non-diversified management investment company registered under Section 8 of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–8 ("the 1940 Act"). On April 21, 1982, the Madison Fund shareholders voted to authorize the Fund to "cease" being a registered investment company and management of Madison Fund has engaged in a search for acquisition opportunities which would qualify it for exemption from the requirements of the 1940 Act. Thus, it has stated that investments would be made in majority owned and controlled subsidiaries to the extent that the Fund might be in a position to submit the appropriate applications to the SEC for deregistration as an investment company should it so desire.

Defendant Schwartz is the chairman of the board of directors of Loral Corporation ("Loral"), a corporation engaged primarily in the design and manufacture of defense electronic systems and electronic communications products. He owns and has the power to vote 134,200 shares of Todd's outstanding shares.

*The Relationship of Schwartz and Madison Fund with Respect to Todd*

In July 1982 Schwartz approached Madison Fund, with which he was previously acquainted, and invited it to consider mak-

ing a substantial investment in Todd. Madison Fund after evaluating the possibility, agreed to go forward and said it would consider acquiring up to 25% of Todd's outstanding stock. Schwartz had indicated that he was willing to commit approximately $5–6 million of his funds to purchase Todd stock which would translate into approximately 5% of the outstanding stock at the then prevailing market price. To equalize their relationship they entered into an agreement on August 24, 1982 whereby each granted to the other a right of first refusal if either were to decide to sell its or his Todd's stock. Madison Fund also granted to Schwartz an option to purchase up to 15% of its shares of Todd under certain circumstances at a price based upon Madison Fund's cost. Schwartz, in turn, granted Furman, Selz, the brokerage firm which introduced the matter, an option to acquire a portion of the Todd shares which were covered by the option agreement between Schwartz and Madison Fund if and after such shares were acquired by Schwartz. Furman, Selz also is being compensated up to $550,000 by Madison Fund and Schwartz as a "financial advisory fee".

The Fund and Schwartz, each for their own account, and in advance of concluding an agreement between them, began purchasing Todd common stock on the New York Stock Exchange. The on-going negotiations between them actually produced mutual assent on all essential terms and written contracts between them and with the stock brokers, came into being on August 24, 1982. They then called on the president of Todd, to explain their purposes and investment plan. They explained that they were interested stockholders who did not regard their investment as hostile and would not constitute a threat to management. They stated their high regard for Todd's management and the effective job it had done and that they had no plans of acquiring a specific percentage of Todd stock, but that their investment might reach 30 percent.

Schwartz and the Fund's president, Gould, also discussed in particular with Todd's president their ideas for Todd's possibly utilizing its excess liquid assets ("redundant cash") to a greater benefit. They stated that as important stockholders they would find a method for expressing their views to the board in a friendly posture and thus by their knowledge, skill and background, make a contribution to the welfare of Todd.

The reaction of Todd's president was to tense up, prepare to resist intrusion by his callers into Todd's affairs, and shortly to retain counsel with instructions to threaten Madison Fund with suit should it exceed the 5% level of stock ownership in Todd and proceed to file a Schedule 13D. Madison Fund was so told by counsel for Todd—his words being: "when they file the 13D, rockets will go off".[1]

Todd's directors, management and employees own 7% of the outstanding shares of Todd, and an additional 11–12% of the shares are in the hands of shareholders closely related to management.

*The Schedule 13D*

On August 25, 1982, for the first time, the investments in Todd common stock by Madison Fund and Schwartz reached 5% of Todd's issued and outstanding shares. Within 10 days thereafter, a Schedule 13D was drafted and the management of Todd was offered but declined an opportunity to review the Schedule 13D as suggested by Madison Fund to Todd. Thereupon, on September 3, 1982, Madison Fund and Schwartz jointly filed with the SEC and the New York Stock Exchange and delivered to Todd a Schedule 13D pursuant to Section 13(d) of the Exchange Act, reflecting the facts that they had acquired shares of the common stock of Todd to establish an equity position in Todd; that they were acting in concert; that their aggregate holdings in Todd as of September 2, 1982 amounted to 8.87% of Todd's issued and outstanding common stock; that subject to their investment judgment as set forth in the filing, they

---

1. The good faith and corporate purpose of the management in preparing for and launching

this litigation were insufficiently developed and no findings thereon are made.

intended to acquire in the aggregate up to 30% of the outstanding shares of Todd's common stock; and that they had no plans to merge, reorganize or liquidate Todd, to sell or transfer a material amount of its assets, or to change materially Todd's capitalization or dividend policy, or its business or corporate structure. The filing also states that either or both of Schwartz and Madison Fund may at any time increase or decrease their respective investments depending on certain factors.

Madison Fund and Schwartz expressly stated in the Schedule 13D that the purpose of their purchases is to make significant investments in Todd and to seek to influence the deployment of excess liquid assets and future cash flows not directly required by or employed in Todd's current business. They further stated therein that although they have no specific plans, recommendations or proposals regarding the future conduct of Todd's business, they intend to discuss with its management the ways in which Todd's liquid assets and future cash flows not directly required by or employed in Todd's current business may be deployed, with the object of enhancing the value of the shareholders' investment in Todd, including among the alternative possibilities such transactions as selective acquisitions or repurchases of all or a portion of the outstanding shares.

Madison Fund and Schwartz expressly denied, in their Schedule 13D, any plans to seek majority representation on Todd's Board of Directors. They stated, however, that they might seek to appoint one or more nominees to serve as Directors of Todd and that they intend to support current management of Todd in the operation of the business.

As of September 17, 1982 Madison Fund and Schwartz had bought a total of 654,600 shares, representing approximately 13.20% of Todd's common stock and on September 20, 1982, they filed an amendment to the Schedule 13D to reflect the increase since the earlier filing.

*The Statutory Obligation Involved*

Section 13(d) of the 1934 Act requires anyone who, directly or indirectly, becomes the beneficial owner of more than 5% of any registered equity security, within ten days, to file with the SEC and the issuer and the stock exchange where the security is traded a Schedule 13D containing all of the information required by the SEC's rules and regulations.

Schedule 13D specifies the categories of information which must be disclosed pursuant to Section 13(d). Foremost among them is the following:

*Item 4. Purpose of Transaction.*

State the purpose or purposes of the acquisition of securities of the issuer. Describe any plans or proposals which the reporting persons may have which relate to or would result in:

(a) The acquisition by any person or additional securities of the issuer, or the disposition of securities of the issuer;

(b) An extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the issuer or any of its subsidiaries;

(c) A sale or transfer of a material amount of assets of the issuer or any of its subsidiaries;

(d) Any change in the present board of directors or management of the issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board;

(e) Any material change in the present capitalization or dividend policy of the issuer;

(f) Any other material change in the issuer's business or corporate structure....;

\*    \*    \*    \*    \*    \*

(j) Any action similar to any of those enumerated above.

Although plaintiff's complaint purports to allege numerous separate claims for relief, they all hinge on whether the Schedule 13D was deficient in its statement of the purpose and intent of the defendants and

the disclosure of the agreements of the group. The alleged deficiencies claimed by the plaintiff are the following:

1. That the Schedule 13D does not disclose the purpose of or plans with respect to the purchase of Todd stock. Specifically, that they didn't say they were seeking to obtain control or majority representation; that they had a positive intention to seek a representation on the board on the assumption only that they were able to buy enough stock; that they didn't tell about the implementation of the program they had in mind thereafter; and that they intended to utilize their position as a mechanism to deregister the company.

2. That the Schedule 13D did not disclose all agreements between the persons who are acquiring shares or between them and other persons. Specifically, that there was an agreement entered into on August 3, 1982, which was earlier than any of the option agreements and the agreement to file jointly a 13D; that the defendants were to work together in a long-term program extending over years; that Schwartz was to be captain of the ship; that he would serve as a member of the board if the group were able to achieve their objectives; and various other details concerning the manner in which the buying program would be implemented and so on.

3. That the Schedule 13D failed to disclose that a number of the arrangements of the group violated the Investment Company Act of 1940. Specifically, that the options granted were securities issued for services, in violation of Section 23(a)(1) of that Act; that there is a series of violations under Section 17 and its subdivisions of that Act premised on the definition of affiliated persons; and that it was unlawful under Section 12(a)(2) of that Act for Madison Fund and Schwartz to enter into a joint trading account in the purchase of securities.

4. That the Schedule 13D failed to identify Furman, Selz, as a member of the 13D group since, it is contended that, it was a beneficial owner of securities of Todd.

5. That the Schedule 13D does not disclose the source of funds used or to be used in connection with the purchases of Todd common stock, and the alleged fact that certain option agreements entered into by defendants are "disguised" loans which violate certain laws.

The plaintiff failed to sustain its burden of proof on these alleged deficiencies by a fair preponderance of the credible evidence and the evidence which the Court accepts as worthy of belief negates each of the alleged deficiencies asserted by the plaintiff. The plaintiff *failed to prove* by a preponderance of the credible evidence: that all agreements were not appropriately disclosed; that all the purposes of the transactions of the Fund and Schwartz and their intent were not fully and fairly disclosed; that there were violations of the Investment Company Act of 1940 and that the claimed violations, if any, are required to be so stated in a Schedule 13D; that the Furman, Selz and Mager defendants held beneficial ownerships in the group; or that the sources of funds to buy Todd common were not disclosed.

*Purposes and Intent*

It seems fairly established by the credible evidence that the purposes and intent of the transactions of the defendants were fairly disclosed in all material respects.

▪ The applicable rule in the disclosure laws is that disclosure is to be made of all definite plans and there is no requirement to make predictions, for example, of future behavior, *Missouri Portlant Cement Co. v. Cargill, Inc.,* 498 F.2d 851, 872 (2d Cir.), *cert. denied,* 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974); or to disclose tentative plans; *Marshall Field & Company v. Icahn,* 537 F.Supp. 413 (S.D.N.Y.1982); or inchoate plans; *Merrit v. Libby, McNeil & Libby,* 510 F.Supp. 366 (S.D.N.Y.1981). It is sufficient to merely identify those matters not fully determined. Schedule 13D was not intended for a recount of history, the evaluation of the investment process, its negotiation and discussions.

Todd's claim that the Schedule 13D failed to disclose the purposes and intent of the group more specifically alleges that an intent to control Todd, a plan to diversify Todd into lines of business other than shipbuilding, and a plan to place Schwartz on the Board of Directors of Todd were omitted.

■ Based upon the credible evidence, the Court finds that the Fund and Schwartz, and each of them, have no purpose or plans with respect to Todd or their investment in Todd other than as described in their Schedule 13D. The Court finds that Schwartz and the Fund do not seek the power to direct or cause the direction of the management and policies of Todd. The Court finds that Schwartz and the Fund only have an intent to acquire an equity position of the extent disclosed and to make suggestions to the incumbent management, possibly seeking some representation on the Board. All of Todd's evidence to the contrary is either the preliminary consideration of the group members and not their final plan, or is mere speculation and conjecture that cannot sustain the plaintiff's burden of proof by a preponderance of the evidence.

Defendants Schwartz and Madison Fund have not formed an intention, plan or purpose to acquire "control" of Todd within the meaning of SEC Rule 12b–2, 17 C.F.R. § 240.12b–2. In particular, the Court finds that the defendants did not have the desire to influence substantially the Issuer's operations. *Chromalloy American Corp. v. Sun Chemical Corp.,* 611 F.2d 240, 246–47 (8th Cir. 1979) sets forth this test of control within the meaning of Rule 12b–2(f).

The Court also finds that the Fund had no plan to use its investment in Todd as a disqualifying investment for purposes of the Investment Company Act. Thus, no inference of any intent to control Todd is possible from the Fund's consideration of deregistration. The Schedule 13D states that the purchasers "intend to discuss with management of the Issuer the ways in which the Issuer's liquid assets and future cash flows not directly required or employed in the Issuer's current business may

be deployed, with the object of enhancing the value of the shareholders' investment in the Issuer." The reference therein to the use of Todd's assets not used in Todd's present line of business discloses an intention to suggest investments in alternate lines of business. To require the purchasers to say this any more explicitly would be meaningless and redundant. The Court also finds no evidence that defendants intended to force Todd to use its liquid assets to the detriment of the shareholders, as Todd alleged in its complaint.

Todd also claimed that defendants failed to disclose a plan to place Schwartz on the Board of Directors of Todd. Based upon the credible evidence, the Court finds that at the time the Schedule 13D was filed there was no set plan of defendants to place Schwartz on the Board. The credible evidence plaintiff cites in support of this claim concerns the August 3rd meeting and thus consists entirely of references to preliminary discussions and negotiations, not firm fixed plans of the type that must be disclosed.

Defendants did disclose in the Schedule 13D that they might seek representation on the Board. To require them to say that Mr. Schwartz would be nominated when they had no firm plan to do this would be to require them to speculate. In addition, such a disclosure might mislead investors into buying out of respect for Mr. Schwartz's abilities when in fact there could be no assurances that he ultimately might seek a position on the Board.

*Agreements*

■ Todd also claims that the Schedule 13D is materially false and misleading in that it fails to set forth and describe defendants' contracts, arrangements, understandings and relationships as required by Item 6 of the Schedule 13D. None of the alleged omissions or misstatements in the Schedule 13D that Todd lists in its Complaint, Proposed Findings of Fact and argument, and no group of these, support a claim that the Schedule 13D was defective or misleading.

Todd asserts that the Schedule 13D was defective in failing to disclose the consideration given by Furman, Selz and Schwartz to the Fund for the options granted to them by the Fund. In particular, Todd claims that Schwartz's option was given to him in consideration of his agreeing to serve on Todd's Board. Also, Todd asserts that both Furman, Selz and Schwartz received the options in exchange for their finding Todd. (Together, these three claims constitute three of the nine agreements that Todd asserts were not properly disclosed).

All of the evidence that Todd cites in support of these conclusions concerns the August 3rd meeting. At that meeting, all of the discussion was still preliminary and tentative. The identity of the members of the purchasing group was not yet set and was still under discussion. The parties were still in the process of expressing their individual concerns and goals. Plaintiff's effort to characterize any of the positions stated at this meeting as firm plans unfairly distorts and improperly characterizes the occurrences. This conclusion is bolstered by the fact that the option agreements were not entered into and executed until late August; it was only then that the negotiations produced mutual assent on all essential terms and contracts came into being. Between the meeting and final execution of the options, many of the details of the purchases had to be negotiated and determined. Lawyers had to be consulted, market conditions had to be monitored, and Todd itself had to be evaluated. The views expressed at the August 3rd meeting do not rise to the level of firm plans that must be disclosed in a Schedule 13D.

In addition, the existence of the option agreements themselves was disclosed in the Schedule 13D. This disclosure clearly revealed at what points stock ownership might change and revealed the possibility that favorable financial deals might mature for some of the parties. These incidents of the issuance of the options are the material factors required to be set forth in Schedule 13D. The history and motivation for the granting of the options is not required to be disclosed. Its inclusion could even be dis-

tracting and misleading if it diverted attention from the plan that the parties actually did work out. Even though purchases of Todd stock commenced after this August 3rd meeting, this does not mean that any agreements were necessarily finalized at that date. Defendants assert that purchases were made as the market presented a good investment opportunity and as the parties hoped that they would eventually be able to reach an agreement on the open issues. This explanation is credible and accepted by the Court.

Todd asserts that defendants failed to disclose that they intended to act in concert to seek Board representation and to act in concert to control Todd. (These claims represent two more of the nine relating to omitted agreements). Plaintiff did not carry its burden of proof on these assertions. As already found, the disclosures in the Schedule 13D on the intent to influence the operations of Todd and possibly seek some representation on the Board are full and fair. The plaintiff has failed to establish with credible evidence that the defendants had a plan to control Todd or to acquire majority representation on the Board. Defendants disclosed in their Schedule 13D that they may seek some representation on the Board and that they will attempt by advice and suggestion to the management to affect the course of action of the company. But these aims are not the equivalent of a desire to attain majority representation or attain control. All agreements of the group to act in concert have been disclosed fully. To require the defendants to disclose more precise detail would itself encourage misleading statements. If defendants are required to speculate on what course of action they *may* take if certain levels of ownership are acquired, investors will be misguided.

Todd's next contention relates to the expected activity of Mr. Schwartz. Todd asserts that the Schedule 13D was misleading in failing to disclose that the defendants had an agreement that Mr. Schwartz would have an active role in Todd and in failing to disclose that Schwartz's role would be larger than his purchased share.

Todd has presented no credible evidence that at the time the Schedule 13D was filed, Mr. Schwartz intended to seek election to the Board or that there was any plan to have him run the group or otherwise assume a role out of proportion to his investments. Defendants did disclose that they might seek Board representation. As all evidence presented to suggest that they had other plans with respect to the Board either refers to preliminary discussions or groundlessly speculates, the Court finds that the disclosure with respect to the agreements on the roles of the parties was full and fair. Schwartz was not acting for Loral.

Todd claims that the Schedule 13D failed to disclose an agreement to act in concert to go into new lines of business or to have Todd go private.

The first part of this claim must fall as the defendants have adequately disclosed their plans to suggest alterations to part of Todd's line of business, as already set forth above. The Court finds that the defendants had no specific agreement as to how this disclosed intention would be carried out.

Regarding the existence of an agreement to take the company private, plaintiff has failed completely to present any evidence that this intention was held by the purchasers. While some early memoranda were put into evidence in which it was noted that Todd had adequate cash to repurchase shares, these memoranda were prepared to evaluate the investment potential of Todd. They did not represent fixed plans of the purchasing group.

Finally, Todd claims that defendants had an agreement as to the voting of the acquired shares of Todd and that the Schedule 13D is misleading for failure to set this forth. There is no merit to this claim. Even if the topic of voting agreements was discussed at the August 3rd meeting, as Todd claims, there is no indication that even at that preliminary stage any plans were formed. Todd mischaracterizes the cooperative spirit of a group of purchasers for an agreement to vote. There is no credible evidence set forth that purports to show that there was a set voting agreement. The fact that the defendants were interested in working together is adequately disclosed by their reporting of their formation of a group.

The Court further finds that any agreements that existed to act in concert with respect to the purposes and plans set forth in Item 4 of the Schedule 13D were disclosed. Todd's claim that there was a long term binding plan to work in concert is purely speculative. No credible evidence establishes any substantiation thereof.

*Investment Act Violations*

■ Based upon the credible evidence, the Court finds that neither the Fund nor Schwartz believes, or has reason to believe, that their purchases of Todd stock, their plans or proposals with respect to Todd, their option agreements as annexed to the Schedule 13D or their arrangements with Furman, Selz violates the 1940 Investment Company Act or any other law as alleged by Todd. The Court finds that no basis in this record establishes violations of the 1940 Act, or, at least that no violations occurred which needed to be stated in the Schedule under the relevant Rules.

SEC Rule 13d–101, Item 2(d) and (e) set forth those requirements which pertain to disclosure of violations of law by the reporting person, 17 C.F.R. § 240.13d–101, Item 2(d) and (e) (1982). The Schedule 13D complies with those requirements.

*Furman, Selz as a Group Member*

■ The Court finds that the option interests of the broker-defendants did not constitute them holders of beneficial ownerships in Todd and did not consequently require them to be identified as members of the group. Also, no other activity or agreements of Furman, Selz or Mager requires them to be identified as members of the group.

Based upon the credible evidence, the Court finds that Furman, Selz and Mager have not entered into any agreement to act in concert with respect to Todd and their investment in Todd. Furman, Selz is acting as a financial advisor and a broker-dealer,

and Mager is acting as an employee of Furman, Selz.

Regarding the beneficial ownership point, *see Transcon Lines v. A. G. Becker, Inc.,* 470 F.Supp. 356, 371 (S.D.N.Y.1979) ["one who is not the beneficial owner of any shares of the subject company is not a member of a group within the meaning of Section 13(d)(3)."] As in *Transcon,* their "exercise of that right [the option] is conceded to be contingent upon a future event" and there was no evidence as to when, if ever, that event might occur. *Id.* at 371. Todd has not alleged that the broker-defendants own any Todd shares and, in fact, they do not. Under Rule 13d–3(a), the brokers would be deemed to be a "beneficial·owner" of Todd shares if they

> ... directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise has or shares:
> (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or
> (2) Investment power which included the power to dispose, or to direct the disposition of, such security. (17 C.F.R. § 240.-13d–3(a)).

Thus, it was entirely appropriate not to have named the broker-defendants (Furman, Selz and Mager) in the Schedule 13D as members of the Madison-Schwartz group. There are no shares in being as yet as to which Furman, Selz could become beneficial owners within 60 days or any other time; and in no event was such an omission injurious to the public in the light of the disclosed option agreement.

Plaintiff also asserts that Furman, Selz should be deemed a beneficial owner of Todd stock as a consequence of the proviso in Rule 13d–3(d)(1)(i) which states:

> any person who acquires a security or power specified in paragraphs (A) ... [an option, warrant or right] with the purpose or effect of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having such purpose or effect, immediately upon such acquisition shall be deemed to be the beneficial owner of the securities which may be acquired through

the exercise or conversion of such security or power.

This argument must fail. It only adds to the class of beneficial owners those individuals who acquire options in connection with transactions that affect the control of the issuer. As discussed elsewhere in this opinion, this Court holds that the plaintiff failed to establish that the purchasers had the intention of acquiring or altering the control of Todd, as the term control is used in the 1934 Act. Thus, the options that Furman, Selz received were not acquired in connection with a transaction to attain or influence control.

*Financial Disclosures*

██ The Court also finds that neither of the option agreements annexed as exhibits to the Schedule 13D establishes a creditor/debtor relationship between the parties thereto, and neither of those agreements constitutes a loan between the parties thereto or among the defendants.

The Schedule 13D discloses that Madison Fund has purchased the Todd shares it acquired with its general corporate funds, and that Schwartz has obtained a line of credit totalling $6.5 million, of which some $4,605,-812.50 has been used to date for the purchase of Todd stock. A copy of the loan document reflecting the terms of the loan is annexed as an exhibit to, and included in the Schedule 13D.

Based upon the credible evidence, the Court finds that the sources of funds used and to be used by the Fund and Schwartz for the purchase of Todd shares and the compensation of Furman, Selz are sufficiently disclosed in the Schedule 13D.

*Conclusions*

The complaint should be dismissed on the merits.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

Complaint dismissed.

SO ORDERED.