## EGGHEAD.COM, INC., Plaintiff,

v.

## BROOKHAVEN CAPITAL MANAGEMENT, CO., LTD., Focused Capital Partners, L.P., Watershed Partners, L.P., Cadence Fund, L.P., Brookhaven Capital Management, LLC, Piton Partners, L.P., Skye Investment Advisors, LLC, Skye Investments, Inc., Vincent Carrino, Daniel Coleman, Paul McEntire, and Robert Lishman, Defendants.

### No. 99 Civ. 9397(CSH).

United States District Court,
S.D. New York.

March 29, 2002.

---

Sheldon Eisenberger, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

This suit is brought pursuant to § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), which "provides that beneficial owners of more than ten percent of any class of an equity security must turn over, to the issuer of that security, any profits earned from a purchase and sale of the securities of that issuer if the purchase and sale are separated by less than six months." *Morales v. Freund,* 163 F.3d 763, 764 (2d Cir.1999). The purpose of this statutory provision is "to deter 'insiders,' who are presumed to possess material information about the issuer, from using such information as a basis for purchasing or selling the issuer's equity securities at an advantage over persons with whom they trade." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.,* 156 F.3d 305, 308 (2d Cir.1998) (footnote omitted); *accord Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir.2001).

The case was scheduled for trial on January 29, 2002. The Court resolved five *in limine* motions made by defendants and one *in limine* motion made by plaintiff in Opinions dated January 9 and January 10, 2002. At a conference on January 15, the parties raised additional issues that would benefit from pre-trial resolution, and the Court adjourned the date of trial until April 8, 2002 to permit full briefing of those issues.

The parties have now submitted cross-motions for summary judgment. Defendants request summary judgment on the basis that, as investment advisers, they are exempt from liability. Defendants have also submitted a letter brief requesting reconsideration of the Court's Opinion of January 9, 2002, which held that certain of plaintiff's claims are not time-barred. Plaintiff's motion for summary judgment asks the Court to reconsider Judge Marrero's decision of September 29, 2000 and decide that defendants as a group are not eligible for the investment adviser exemption; in the alternative, plaintiff moves for

partial summary judgment on the basis that defendants were not entitled to the exemption prior to February 17, 1998. This Opinion resolves both parties' requests for reconsideration and motions for summary judgment.

## I. The Court's Decision that Plaintiff's Claims Are Not Time–Barred

Defendants request reconsideration of the Court's decision in its Opinion dated January 9, 2002, which resolved defendants' first *in limine* motion. In that *in limine* motion, defendants sought to preclude plaintiff from presenting any claims relating to any time period other than May 27, 1998—September 30, 1998 and September 10, 1997—November 21, 1997. Defendants asserted that claims that arose prior to those dates are barred by the statute of limitations, viewed in conjunction with Rule 9(f) of the Federal Rules of Civil Procedure. In its January 9 Opinion, the Court decided that Fed.R.Civ.P. 9(f) does not limit plaintiff's claims to the dates stated in the complaint and that the statute of limitations also does not limit plaintiff's claims, because equitable tolling applies.[1] Defendants now request reconsideration on the ground that plaintiff's complaint provided no notice of claims arising from transactions prior to September 10, 1997.

In its complaint, plaintiff alleged that defendants 1) sold shares of Egghead.Com, Inc. ("Egghead") between July 6, 1998 and September 30, 1998 which matched purchases between May 27, 1998 and July 2, 1998, and 2) sold Egghead shares between September 10, 1997 and November 21, 1997. Compl. ¶¶ 22–23, 25. Plaintiff did not identify in its complaint the purchase dates for this latter group of shares but provided an explanation for not doing so: "[Defendants] failed, in violation of Section 13(d) of the Exchange Act, to report the purchases that they made while they maintained a greater than 10% beneficial ownership...." Compl. ¶ 25. Furthermore, plaintiff asserted in its complaint that defendants may be liable for "additional purchases and sales ... of which plaintiff is now unaware." Compl. ¶ 26.

■ It was because of defendants' failure to make required disclosures that I held, in the Opinion dated January 9, 2002, that equitable tolling applies to plaintiff's claims. For comparable reasons, I decide that plaintiff was not required to include in its complaint information about stock purchases which defendants wrongfully failed to disclose. Plaintiff provided ample notice of its claim, based on the information available to it; and plaintiff specifically gave notice that it was seeking to impose liability based on unknown purchases that matched sales between September 10, 1997 and November 21, 1997. It should come as no surprise to defendants that those unknown purchases occurred prior to September 10, 1997.

## II. Defendants' Entitlement to the Investment Adviser Exemption

■ According to the current version of Rule 16a–1 promulgated under the Securities and Exchange Act of 1934, securities are not counted toward the 10% ownership threshold that triggers liability for short-swing profits if they are "held for the benefit of third parties or in customer or fiduciary accounts in the ordinary course

---

1. Plaintiff had argued that if equitable tolling did not apply, plaintiff could amend its complaint and its amended complaint would relate back to the original pleading under Rule 15(c). The Court noted in its January 9 Opinion that if the statute of limitations did bar plaintiff's claims, plaintiff would not be able to avoid its effect by amending the complaint and invoking the relation back doctrine.

of business" by "[a]ny person registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3) or under the laws of any state," or groups of such persons, "as long as such shares are acquired by such institutions or persons without the purpose or effect of changing or influencing control of the issuer or engaging in any arrangement subject to Rule 13d–3(b) (§ 240.13d–3(b))." 17 C.F.R. § 240.16a–1. Thus investment advisers who trade in stock on their clients' behalf in the ordinary course of business are removed from the category of "insiders" and are not "presumed to possess material information about the issuer." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.,* 156 F.3d 305, 308 (2d Cir. 1998).

A. *Judge Marrero's Decision that Defendants as a Group Are Eligible for the Investment Adviser Exemption*

■ In his September 29, 2000 Opinion, reported at 113 F.Supp.2d 615, Judge Marrero concluded after a comprehensive analysis of Rule 16a–1 that "the investment adviser exemption provided for under subsection (v) is not vitiated by subsection (x) because the adviser may be part of a group for Section 13(d) purposes." *Id.* at 629. Plaintiff is discontented with the practical result of Judge Marrero's conclusion because "the exclusion of [Brookhaven's] shares held on behalf of its managed accounts (other than shares held directly by group members [Watershed Partners, Focused Capital Partners, and Cadence Fund,] which are included in the group's aggregate beneficial ownership) would reduce the group's aggregate beneficial ownership below 10% . . . ." Plaintiff's Brief at 17.

Plaintiff asks this Court to disapprove Judge Marrero's ruling and accept its theory, namely, that "a group constituted or deemed so for the purposes of Sections 16

and 13(d)(3) and which includes an institution or person otherwise exempt under Rule 16a–1(a)(1)(i) through (ix), would lose the exemption in the event any member of the group is not 'independently exempt' under any of these subsections." 113 F.Supp.2d at 620. Defendants ask that I adhere to Judge Marrero's ruling, relying principally upon the law of the case doctrine. I conclude that the law of the case doctrine applies, decline to disturb Judge Marrero's ruling, and deny plaintiff's application to be relieved of its consequences.

■ "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *DiLaura v. Power Auth. of the State of New York,* 982 F.2d 73, 76 (2d Cir.1992) (citations and internal quotation marks omitted). "Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment," *Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 277 (2d Cir.1996) (citation and internal quotation marks omitted); however, the Second Circuit has cautioned that "while a court may sometimes review an earlier ruling, nevertheless, because there is a strong policy favoring finality the court exercises its underlying power to review earlier rulings sparingly." *North River Ins. Co. v. Philadelphia Reins. Corp.,* 63 F.3d 160, 165 (2d Cir.1995) (citations, internal quotation marks, and ellipses omitted). That policy reflects the salutary principle that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir. 1964). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evi-

dence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing and quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 at 790).

None of these grounds for reconsidering Judge Marrero's is present. The question is purely one of law; the possibility of "new evidence" does not arise. Plaintiff professes to find in the Second Circuit's subsequent decisions in *Morales v. Quintel Entm't. Inc.*, 249 F.3d 115 (2d Cir.2001) and *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10 (2d Cir.2001) legal grounds for vacating Judge Marrero's interpretation of Rule 16a–1. There is no substance to this argument. Judge Marrero's ruling addressed the question of exemptions within a group under Rule 16a–1(a)(1)(i)–(ix). Neither *Quintel* nor *Levy* presented that question, and accordingly the Court of Appeals said nothing about it. I accept that Judge McKenna disagrees with Judge Marrero's interpretation, *see Strauss v. Kopp Inv. Advisors*, No. 98 Civ. 7493, 1999 WL 787818 (S.D.N.Y. Sept. 30, 1999), and *Morales v. Adept Technology, Inc.*, No. 00 Civ. 0957, 2000 WL 1738586 (S.D.N.Y. Nov. 22, 2000), and Judge Wood has reached the same conclusion as Judge McKenna, albeit without analysis or discussion, *see Morales v. Auspex Systems, Inc.*, No. 00 Civ. 1173, 2001 WL 258502 (S.D.N.Y. Mar. 15, 2001). While I yield to no one in my admiration for these two able colleagues, their opinions do not constitute "an intervening change of controlling law," and I find much to praise in Judge Marrero's painstaking analysis. The parties battled vigorously on behalf of their different interpretations of the rule, Judge Marrero resolved the issue in a lengthy and thoughtful opinion, and, applying the law of the case doctrine, I will not disturb his ruling.

B. *The Effect of Brookhaven's State Registration as an Investment Adviser*

■ Brookhaven [2] was registered as an investment adviser in California but not federally during 1997 and 1998, the relevant time period. The current version of Rule 16a–1 allows an exemption for "[a]ny person registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3) or under the laws of any state." 17 C.F.R. § 240.16a–1. The language "or under the laws of any state" was added by an amendment published on January 16, 1998, and effective on February 17, 1998. SEC Release No. 34–39538, 63 Fed.Reg. 2854, 2854, 2858, 2868 (Jan. 16, 1998). Defendants argue that the amendment should be given retroactive effect so that Brookhaven can claim the benefit of the investment adviser exemption for periods before February 17, 1998, as well as periods after that date. Plaintiff argues that the amendment should not be given retroactive effect. Furthermore, plaintiff argues that Brookhaven was obligated to register federally after February 17, 1998, and therefore may not claim the exemption after that date based on its state registration.

The amendment to Rule 16a–1 was passed to harmonize that rule with changes to the Investment Advisers Act of 1940 which took effect in 1997. National Securities Markets Improvement Act of 1996, Pub.L. No. 104–290, 110 Stat. 3416, *amending* 15 U.S.C. § 203A, *and amended by* Pub.L. No. 105–8, 111 Stat. 15 (1997).

**2.** I use the name "Brookhaven" to refer to both Brookhaven Capital Management, Co., Ltd. and Brookhaven Capital Management, LLC.

The SEC Release adopting the amendment to Rule 16a–1 explained:

> [T]he National Securities Markets Improvement Act of 1996 .... amended the Investment Advisers Act of 1940 ... by adding Section 203A, which prohibits certain investment advisers from registering with the Commission. For the most part, only advisers that have "assets under management" of $25 million or more, that advise registered investment companies, or that meet one of several exemptions from the prohibition on registration will be registered with the Commission. Other advisers will be regulated by state securities authorities....

> The Commission is making a conforming change to the Section 16 rules by amending Rule 16a–1(a)(1)(v) to include these investment advisers in the list of persons that are not deemed to be the beneficial owners of securities held for the benefit of third parties.

63 Fed.Reg. at 2858.

The first issue presented by the parties' briefs is whether the amendment to Rule 16a–1 should be given retroactive effect. Plaintiff contends that the language of the SEC adopting release makes it clear that the amendment was effective as of February 17, 1998, and not before. Defendants argue that the amendment should have retroactive effect because it reflects longstanding SEC policy; at a minimum, defendants argue that because the amendment was designed to conform Rule 16a–1 to the changes to the Investment Advisers Act which were effective July 8, 1997, the amendment to Rule 16a–1 should be applied back to that date. The parties disagree over the general principles and presumptions that a court should apply in determining whether a rule amendment should be applied retroactively.

The Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) explained in depth the interplay between "two seemingly contradictory statements.... The first is the rule that 'a court is to apply the law in effect at the time it renders its decision.' The second is the axiom that '[r]etroactivity is not favored in the law,' and its interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Id.* at 264, 114 S.Ct. 1483, *quoting Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) *and Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). After discussing the history and rationale behind these two canons of statutory (and regulatory) construction, the Court provided the following guidance:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280, 114 S.Ct. 1483. Thus, unless a statute clearly indicates otherwise, there is a "presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Id.* at 278,

114 S.Ct. 1483. Different considerations apply to procedural rules. "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id.* at 275.

Rules promulgated pursuant to statutory authority may be procedural; or, like statutes themselves, they may affect "substantive rights, liabilities, or duties." I think it clear that Rule 16a–1 is substantive, not procedural. The rule governs primary conduct, affecting private parties' rights and obligations. The rule identifies those persons who are liable and those persons who are not liable for short-swing profits in the stock of corporations in which they have a greater than 10% beneficial interest. Because Rule 16a–1 deals with central issues of liability, not issues "collateral to the main cause of action," *Landgraf,* 511 U.S. at 277, 114 S.Ct. 1483, it should not be applied retroactively absent a clear expression of intent to the contrary.

The SEC Release announcing the amendment to Rule 16a–1 along with other amendments stated: "The amendments are effective February 17, 1998." 63 Fed. Reg. at 2854. This provision is not conclusive on the issue of regulatory intent, *see Landgraf,* 511 U.S. at 257, 263, 114 S.Ct. 1483, particularly since the Release dealt principally with other, unrelated rule amendments, notably changes to the reporting obligations of large shareholders. The amendment to Rule 16a–1 differs from most of the amendments announced in the Release in that it was intended to make the rule consistent with recent statutory changes.

In introducing the amendment to Rule 16a–1, the Release specifically refers to a recent amendment to the Investment Advisers Act, the addition of § 203A. 63 Fed. Reg. at 2858. Prior to the amendment to the Investment Advisers Act, any investment adviser could apply for federal registration under § 203 of that act and thereby become eligible for the exemption provided by Rule 16a–1. The newly added Section 203A prohibits certain investment advisers that are regulated under state law from registering federally. The conforming amendment to Rule 16a–1 ensures that such investment advisers do not lose their eligibility for the investment adviser exemption. Given the clear explanation in the SEC Release that the amendment to Rule 16a–1 was intended to make the rule consistent with the newly amended Investment Advisers Act, I conclude that the rule amendment was intended to have effect concurrently with the statutory amendment, which became effective 270 days after Oct. 11, 1996, on July 8, 1997. Pub.L. No. 104–290 § 308(a), 110 Stat. 3416, *amended by* Pub.L. No. 105–8, 111 Stat. 15 (1997). *Cf. Enfield v. Kleppe,* 566 F.2d 1139, 1141–42 (10th Cir.1977) (holding that where regulation conflicts with statute, amendment conforming regulation to statute could be applied retroactively), *citing Dixon v. United States,* 381 U.S. 68, 74–75, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965).

Defendants argue that the amendment to Rule 16a–1 should be applied retroactively not just back to the effective date of § 203A of the Investment Advisers Act but back to the original date of promulgation of Rule 16a–1. Defendants allege that the SEC has a general policy of protecting investment advisers and has never had a preference for investment advisers who register under federal law as opposed to under state law. The language of Rule 16a–1, prior to the 1998 amendment, precludes the interpretation advanced by defendants. The rule did not simply exempt investment advisers but rather exempted "[a]ny person registered as an investment

adviser under Section 203 of the Investment Advisers Act of 1940." This language makes clear that only investment advisers who registered federally were intended to be eligible for the investment adviser exemption before Rule 16a–1 was amended.

Plaintiff argues that Brookhaven is not entitled to the investment adviser exemption based on its state registration, because Brookhaven had more than $25 million in assets under management and therefore was not prohibited by § 203A of the Investment Advisers Act from registering federally; furthermore, plaintiff contends that Brookhaven was expressly required to register federally under § 203, because Brookhaven had more than fifteen clients. Defendants respond that Rule 16a–1, as amended, exempts investment advisers who register federally "or under the laws of any state" without imposing any further conditions. Defendants also contend that Brookhaven was not required to register federally, because it had fewer than fifteen clients.

Section 203(a) of the Investment Advisers Act requires investment advisers who do business in interstate commerce to register with the SEC, except for those investment advisers exempted by § 203(b) and § 203A. 15 U.S.C. § 80b–3a(a)(1)(A). Section 203(b) provides that certain investment advisers "need not be registered" federally, including "any investment adviser who during the course of the preceding twelve months has had fewer than fifteen clients...." 15 U.S.C. § 80b–3(b)(3). The newly enacted § 203A provides that "[n]o investment adviser that is regulated or required to be regulated as an investment adviser in the State in which it maintains its principal office and place of business shall register under section 80b–3 of this title, unless the investment adviser ... has assets under management of not less than $25,000,000." 15 U.S.C. § 80b–3a(a)(1)(A).

On its face, the current version of Rule 16a–1 appears to exempt investment advisers who register under either federal or state law, with no limitations. The rule exempts "[a]ny person registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3) or under the laws of any state." 17 C.F.R. § 240.16a–1. The rule does not expressly limit exemption based on state registration to those investment advisers who are excused from federal registration by § 203 of the Investment Advisers Act or prohibited from registering federally by § 203A. On the other hand, the SEC Release adopting the amendment to Rule 16a–1 which added the language "or under the laws of any state" states that the purpose of the amendment is to include in the list of exempt persons those investment advisers who are prohibited from registering federally by the newly enacted § 203A of the Investment Adviser Act. 63 Fed.Reg. at 2858. The parties do not cite any cases analyzing state registration in connection with Rule 16a–1, nor has the Court's research uncovered any such cases.[3]

██ I decide to follow the plain language of Rule 16a–1. An investment adviser may claim exemption under amended

---

3. A comparable provision appears in Rule 13d–1(b)(1), which permits certain persons to file a short-form Schedule 13G in lieu of a Schedule 13D to report an acquisition of beneficial ownership of greater than five percent of a class of stock. That rule was amended simultaneously with Rule 16a–1, and its current version applies to "[a]ny person registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3) or under the laws of any state." Rule 13d–1(b)(1)(ii)(E). The Court's research has not discovered any cases analyzing state registration in connection with Rule 13d–1 either.

Rule 16a–1 either (1) based on federal registration under § 203 of the Investment Adviser Act, or (2) based on state registration without reference to the requirements and prohibitions of § 203 and § 203A. This reading achieves the purpose stated in the SEC Release; it entitles investment advisers who are prohibited from registering federally by § 203A to claim exemption under Rule 16a–1 based on their state registration. It also entitles two other categories of investment advisers, not mentioned by the SEC Release, to clam exemption under Rule 16a–1 based on their state registration: those who are permitted but not required to register federally under § 203 and those who are required to register federally under § 203. This straightforward reading of amended Rule 16a–1 which I adopt casts a wider net than the language of purpose in the SEC Release would strictly require, but it does not conflict with that purpose. It may have been that the SEC intentionally chose to make a simple amendment even though a more complex amendment, with restrictions cross-referencing § 203 and § 203A of the Investment Adviser Act, would have achieved its purpose more closely. I decline to read restrictions into the rule where those restrictions are not necessary to achieve the stated intent of the SEC in promulgating the rule.

In sum, I conclude that the amendment to Rule 16a–1 should have retroactive effect back to July 8, 1997. For transactions prior to that date, Brookhaven is not entitled to the investment adviser exemption. For transactions subsequent to that date, Brookhaven can claim exemption under Rule 16a–1 based on its state registration, regardless of whether it was prohibited from registering federally by § 203A of the Investment Adviser Act or excused from registering federally by § 203. Exemption is not automatic, however. Brookhaven must still demonstrate that it did not own Egghead stock with the pur-

pose or effect of changing or influencing control of Egghead in order for it to be entitled to an exemption under Rule 16a–1. I will address that issue in Part C.

Plaintiff seeks to impose liability based in part on purchases of Egghead stock by defendants prior to July 8, 1997, when Brookhaven was not entitled to the investment adviser exemption. Plaintiff matches those purchases, however, with sales that took place after July 8, 1997. Section 16(b) of the Securities Exchange Act of 1934, which imposes liability for short-swing profits by beneficial owners, requires beneficial ownership at both the time of purchase and the time of sale: "This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale. . . ." Since plaintiff has not demonstrated as a matter of law that Brookhaven was not exempt from liability both at the time of purchase and at the time of sale, I deny plaintiff's motion for summary judgment.

C. *Whether Brookhaven's Purchases Had the Purpose or Effect of Changing or Influencing Control of Egghead*

Rule 16a–1 exempts from the definition of beneficial ownership shares held by a registered investment adviser "as long as such shares are acquired by such institutions or persons without purpose or effect of changing or influencing control of the issuer or engaging in any arrangement subject to Rule 13d–3(b) (§ 240.13d–3(b))." 17 C.F.R. § 240.16a–1. This proviso effectively limits the investment adviser exemption to entities that acquire stock solely on behalf of their clients, for investment purposes, and therefore are not "insiders" who are "presumed to possess material information about the issuer." *Gwozdzinsky v.*

*Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir.1998).

Defendants contend that Brookhaven is entitled to summary judgment because undisputed facts establish that Brookhaven's purchases of Egghead stock did not have the purpose or effect of changing or influencing control of Egghead. Defendants' earlier motion to dismiss on the basis that defendants had no intent to control Egghead was denied by Judge Marrero in his Opinion of September 29, 2000. Judge Marrero decided that plaintiff was entitled to conduct discovery on the issue of defendants' intent in acquiring Egghead stock. 113 F.Supp.2d 615, 629–33. Defendants now argue that the information produced during discovery unambiguously shows that defendants had no intent to control Egghead and in fact did not influence control of Egghead.

Plaintiff offers the following evidence to show that defendants intended to influence the management of Egghead. Defendants stated in their Schedule 13D filing of November 16, 1998:

> The principal purpose of the acquisitions of Stock reported herein is investment. . . .
>
> The persons named in ... this statement intend to communicate directly with [Egghead's] management regarding its financial condition, management and business plan, with a view to formulating suggestions for improvement, and may seek to be included in the present board of directors of [Egghead].

Wexler Aff. dated Feb. 8, 2002, Ex. 5. The Chairman of Egghead, George Orban, stated in his deposition that defendants Carrino and Coleman, on behalf of Brookhaven, met with him multiple times and had "intense" discussions with him about disposition of assets, acquisition plans, financial plans, strategic plans, and day-to-day activities, including the use of cash proceeds from the divestiture of a division of Egg-

head and strategies for raising the stock price. Orban Dep. at 31–34, Ex. 24 to Wexler Aff. dated Feb. 22, 2002. Carrino and Coleman also asked Orban for a seat on the board of directors, which the directors declined to grant. Orban Dep. at 34–35, 38–40.

 When a defendant's intent is at issue, "summary judgment should be used sparingly. . . . A plaintiff must nevertheless offer concrete evidence from which a reasonable juror could return a verdict in his favor." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (citations and quotation marks omitted). While plaintiff has offered no evidence that defendants *effectively* exercised any control over Egghead, plaintiff has presented evidence from which a reasonable juror could find that defendants had the purpose of controlling or influencing control of Egghead.

Control for purposes of Rule 16a–1 is not defined, but it is defined for purposes of securities rules governing disclosure obligations. Rule 12b–2 defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b–2. Interpreting the definition provided by Rule 12b–2, the Eight Circuit stated: "[a] desire to influence substantially the policies, management and actions of [an issuer] amounts to a purpose to control [the issuer]." *Chromalloy Am. Corp. v. Sun Chem. Corp.*, 611 F.2d 240, 246 (8th Cir.1979).

In *Chromalloy,* the court found ample evidence of an intent to control where the defendant planned to acquire twenty percent of the issuer's stock, attempted to gain representation on the issuer's board of directors, and intended "to review continually its position" with respect to the

issuer. *Id.* at 246. The court therefore concluded that the defendant was required to disclose its control purpose on Schedule 13D, even though that purpose had "not taken shape as a fixed plan." *Id.* at 247.

Similarly, the district court in *Standard Financial, Inc. v. LaSalle/Kross Partners, L.P.,* No. 96 C 8037, 1997 WL 80946 (N.D.Ill. Feb. 20, 1997) decided that the defendants should have disclosed in their Schedule 13D that they had a control purpose, rather than a mere investment purpose; the court relied principally on the following evidence in finding a control purpose: "(1) defendants' expressed intent to gain two seats on the board of directors and (2) defendant's expert, Professor Fiflis' opinion that defendants could enhance their returns by influencing management." *Id.* at *5; *see also Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1223–26 (4th Cir.1980) (adopting *Chromalloy's* interpretation of "control" and upholding district court's finding that defendants' statement that they had investment purpose rather than control purpose was misleading); *Gulf & W. Indus., Inc. v. Great Atl. & Pac. Tea Co.,* 476 F.2d 687 (2d Cir.1973) (affirming district court's finding, after preliminary injunction hearing, that defendant failed to disclose intent to exercise influence or control over issuer).

Defendants cite *Todd Shipyards Corp. v. Madison Fund, Inc.,* 547 F.Supp. 1383 (S.D.N.Y.1982) for the proposition that the fact that defendants attempted to influence the management of Egghead through their suggestions and gain a seat on the board of directors "is not indicative of a control purpose as a matter of law." Def. Reply at 6. Defendants overstate the holding of *Todd Shipyards.* The court in that case held a bench trial on the plaintiff's suit for a permanent injunction. The plaintiff claimed that the defendants' Schedule 13D failed to adequately disclose their control purpose. The court decided that the plain-

tiff had not demonstrated inadequate disclosure by a preponderance of the credible evidence. *Id.* at 1387. The defendants' Schedule 13D stated that they intended to make significant investments in the issuer, to influence its management in particular respects, and possibly to seek to appoint one or more nominees to the board of directors. *Id.* at 1386. The court found that this statement fairly described the defendants' purposes. Furthermore, the court concluded that the defendants were not required to state in their Schedule 13D that they intended to "control" the issuer, because they "did not have the desire to influence substantially the Issuer's operations." *Id.* at 1388, *citing Chromalloy,* 611 F.2d at 246–47.

*Todd Shipyards* is distinguishable from the present case in two important respects. First, the court in *Todd Shipyards* was weighing the evidence after a bench trial, not deciding whether the plaintiff had presented sufficient evidence to create a question for the jury. Second, the court in *Todd Shipyards* was deciding whether the defendants' Schedule 13D, which disclosed a purpose to influence and seek board representation, was adequate. In the present case, plaintiff has presented sufficient evidence from which a jury might infer that defendants intended to influence substantially the management of Egghead and therefore that defendants should be liable for insider trading.

Defendants' reliance on *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490 (7th Cir.1986) is also misplaced. That case dealt with liability for false or misleading statements in a prospectus under the Securities Act of 1933. "Section 11 ... creates presumptive liability for the issuer, all members of its board, and all who sign the prospectus or are named as preparing it.... Section 12 ... imposes liability on those who offer or sell the

security.... Then § 15 ... imposes liability on anyone who 'controls any person liable under sections 11 or 12....'" *Id.* at 494. The court decided that the defendant law firm and accounting firm could not be liable as control persons, because "[t]heir ability to persuade and give counsel is not the same thing as 'control,' which almost always means the practical ability to *direct* the actions of the people who issue or sell the securities." *Id.* at 494.

Unlike the defendants in *Barker,* the defendants in the present case were not independent advisers of Egghead but rather, according to plaintiff's evidence, sought to influence management of Egghead by virtue of their substantial stock ownership and sought to be included on the board of directors. It is worth noting that the statutory provisions applicable in *Barker* treat a director presumptively as a control person. Thus even if the meaning of control in those provisions is identical with the meaning of control for purposes of Rule 16a–1, which is debatable, defendants' intent to gain board membership could constitute an intent to control Egghead. It is not necessary for defendants to have sought majority board membership.

It is significant that Rule 16a–1 speaks in the disjunctive, not the conjunctive. Thus the rule provides that an individual or entity loses the investment adviser exemption if shares are acquired with "the purpose *or* effect" of changing or influencing control of the issuer (emphasis added). In the case at bar, discovery does not seem to have revealed evidence that the defendants' acquisition of Egghead shares produced the *effect* of changing or influencing control of the company. But the evidence does demonstrate the existence of a genuine issue about the material fact of whether defendants acquired Egghead shares with the *purpose* of doing so. That is sufficient to preclude summary judgment in defendants' favor.

### D. *Whether Skye and Piton Are Exempt*

Defendants also request summary judgment on the basis that Piton Partners, L.P. ("Piton"), Skye Investment Advisors, LLC ("Skye LLC"), Skye Investments, Inc. ("Skye Inc."), Paul McEntire, and Robert Lishman are exempt by virtue of the fact that Skye LLC is federally registered as an investment adviser. Plaintiffs allege that Piton Partners, L.P. traded in Egghead stock as a group member with Brookhaven and other defendants. Skye Inc. is the manager and majority member of Skye LLC, which is a general partner and investment adviser of Piton. McEntire is Chairman and Managing Director of Skye LLC and is CEO and Director of Skye Inc. Lishman is a director of Skye LLC.

While plaintiff alleges that Skye Inc., Skye LLC, McEntire, and Lishman are group members with Brookhaven and other defendants, plaintiff does not allege that any of these four defendants traded in Egghead stock. "[P]laintiff is not seeking any profits to be disgorged by Skye, McEntire or Lishman since they did not engage in any short-swing trading in Egghead securities." Pl. Opp. Brief at 9. Seeing as plaintiff admittedly does not seek any relief from Skye Inc., Skye LLC, McEntire, or Lishman, defendants' motion for summary judgment with respect to these defendants is granted.

Defendant also seeks summary judgment with respect to Piton, which did engage in short-swing trading in Egghead stock, because "one of its general partners and investment advisers, Skye LLC ..., was a federally registered investment adviser." Def. Brief at 22. This argument finds no support in Rule 16a–1. That rule provides that registered investment advisers "shall not be deemed the beneficial owner of securities ... held for the benefit

of third parties or in customer or fiduciary accounts in the ordinary course of business...." 17 C.F.R. § 240.16a–1(a)(1). The rule does not exempt customers of registered investment advisers or entities managed by investment advisers. Therefore, defendants' motion for summary judgment with respect to Piton is denied.

## III. *Conclusion*

For the reasons stated above, plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted as to Skye Investment Advisors, LLC, Skye Investments, Inc., Paul McEntire, and Robert Lishman and is denied as to all other defendants.

Trial is scheduled to begin Monday, April 8, 2002. The parties are directed to file and serve, with courtesy copies delivered to chambers, by 5:00 p.m. on Wednesday, April 3:

1) a list of witnesses each party intends to call in its case in chief;

2) a list of exhibits each party intends to offer in its case in chief;

3) proposed voir dire questions for jury selection; and

4) requests to charge with appropriate citations.

It is SO ORDERED.